Case 4:21-cv-00107   Document 20   Filed on 07/22/22 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
July 22, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **GLORIA D. LACSON FC., et al.** | § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. 4:21-CV-00107 |
| **MERRICK GARLAND, U.S. ATTORNEY GENERAL, et al.** | § § § § | |
| Defendants. | | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] is Plaintiffs' Motion for Summary Judgment (Dkt. No. 11) as well as Defendant's Motion to Dismiss and Cross-Motion for Summary Judgment. (Dkt. No. 13). The Court has considered the motions, the responses, the replies, and the applicable law. For the reasons set forth below, the Court **RECOMMENDS** that Defendant's Motion to Dismiss and Cross-Motion for Summary Judgment be **GRANTED,** and that Plaintiffs' Motion for Summary Judgment be **DENIED**.[2]

**I.    BACKGROUND**

This action concerns the denial by the United States Citizenship and Immigration Services ("USCIS") of an I-129, Petition for a Nonimmigrant Worker, filed by Plaintiff Gloria D. Lacson, FC Inc., DBA Sweet Angels Day Care ("Sweet Angels") on behalf of Plaintiff Massoud

---

[1] This case was referred to the Undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure ("Rule") 72. (*See* Dkt. No. 18).

[2] Plaintiffs also filed a Motion to Exceed the Page Limit. (Dkt. No. 12). The Court hereby **GRANTS** Plaintiffs' Motion.

Shamsoddin Vostakalei ("Shamsoddin") (Dkt. No. 10-1, 25–36), and the subsequent dismissal of an appeal from that decision by the Administrative Appeals Office ("AAO") on November 27, 2020 (Dkt. No. 10-1, 1–11). The I-129 petition, filed on March 6, 2019, sought to extend the previously authorized L-1 nonimmigrant classification of Shamsoddin as an intra-company transferee, international executive or manager under Section 101(a)(15)(L) of the Immigration and Nationality Act ("INA"), as amended by the Immigration Act of 1990, 8 U.S.C. § 1101(a)(15)(L), in his capacity as President and Chief Executive Officer of Sweet Angels Day Care. The I-129 petition was denied based on a determination that Sweet Angels Day Care had failed to establish that the beneficiary, Shamsoddin, was employed in an executive capacity as defined in the Immigration and Nationality Act (INA), and additionally that the Plaintiffs were not doing business in the United States as defined in the applicable regulations (8 C.F.R. 214.2(l)(ii)(H) (Dkt No. 10-4, 106–116). On June16, 2020, the Plaintiffs filed an appeal of the denial of the I-129 to the Administrative Appeals Office ("AAO). The AAO dismissed the appeal on November 27, 2020 (Dkt. No. 10-1, 1–-11). Plaintiffs now come before this Court requesting a Summary Judgment reversal of the AAO's decision to deny the appeal. In response, Defendant filed a Motion to Dismiss and Cross-Motion for Summary Judgment. The Court **RECOMMENDS** that Defendant's Motion to Dismiss and Cross-Motion for Summary Judgment be **GRANTED**, and that Plaintiffs' Motion for Summary Judgment be **DISMISSED**.

II.     FACTS

In March 2018, USCIS approved an I-129 Petition for Nonimmigrant Worker filed by Sweet Angels Day Care, a newly established Texas corporation, seeking to classify Plaintiff, a Filipino citizen, as an L-1, Intracompany transferee/International Executive/ Manager, valid for a one-year period until March 21, 2019. On March 6, 2019, Sweet Angels Day Care sought to extend

the validity of the L-1 classification for Shamsoddin by filing another I-129 petition. (Dkt. No. 1 ¶¶ 2, 7, 26 & 29); *See* 8 U.S.C. § 1101(a)(15)(L). On August 27, 2019, USCIS issued a Request for Evidence ("RFE") seeking further evidence that Shamsoddin would continue to be employed by Sweet Angels Day Care in the United States in an executive or managerial capacity. (Dkt. No. 1 ¶¶ 31–32). Plaintiffs responded to the RFE with the following documentation:

    i. A statement regarding the employment and daily duties of Beneficiary from Gloria D. Lacson FC., Inc.

    ii. Specific pages from Sweet Angels Day Care's Wells Fargo Bank statements from August 2016 to October 2019, showing wire transfers from the Filipino Parent Company.

    iii. Remittance slips from the Filipino parent company's Allied Banking account for wire transfers to U.S. subsidiary from August 2016 to October 2019.

    iv. An amended 2018 tax return showing foreign ownership of Sweet Angels Day Care.

    v. A Dun & Bradstreet email confirmation for a request of change of the Sweet Angels Day Care profile listing name of the parent company.

    vi. Texas Administrative Code § 745 - rules regarding Child-Care Administrators in Texas which evidence the professional nature of Beneficiary's subordinates.

    vii. O*Net Online Summary Report and Occupational Outlook Handbook for Child-Care Administrator or Child-Care Director showing that for these occupations, a bachelor's degree and several years of work experience is usually required, evidencing the professional nature of Shamsoddin' s subordinates.

    viii. Biweekly pay statements from July 1, 2019, to November 15, 2019, evidencing a five-and-a-half-month period up to the time of filing when Sweet Angels employed 6 U.S. workers besides Shamsoddin.

(Dkt. No. 1 ¶ 33). The first document in the above list included Plaintiffs' assertions that Shamsoddin:

      i. Developed the corporate governing documents and helped legally form the Company with the Texas Secretary of State.

      ii. Opened the business bank accounts with Wells Fargo Bank.

      iii. Obtained licenses, permits and documentation required through the Texas Department of Family and Protective Services.

      iv. Purchased a property and ensured that the facilities were safe and secure for child-care services.

      v. Hired a Child-Care Director who is properly licensed according to the Texas Administrative Code to operate a child-care center.

      vi. Hired teachers and care staff who are knowledgeable and experienced to care for children.

      vii. Ensured that the Company complies with all other laws.

(Dkt. No. 1 ¶ 49). On February 18, 2020, USCIS denied the I-129 petition on behalf of Shamsoddin because the descriptions Plaintiffs used to describe Shamsoddin's duties was too vague. (Dkt. No. 10-1, 25–36). Moreover, based on the frequency of turnover and inadequacy of staffing at Sweet Angels Day Care, the Agency was unable to say if Shamsoddin was in a primarily executive role. (*Id.*). The denial stated:

      i."USCIS is unable to determine that the beneficiary primarily directs the management of the organization" or "duties in a primarily executive capacity."(Dkt. No. 1 ¶ 34).

      ii."USCIS is unable to determine that the staffing of the organization will support a position in a primarily executive capacity." (*Id.*).

      iii."[T]he evidence of record is insufficient to establish that [Sweet Angels] has been, and still is engaged in the regular, systematic, and continuous provision of goods and/or services in the United States." (*Id.*).

On April 22, 2020, Plaintiffs filed an appeal with the AAO. The appeal included the following documents:

      i. An expert opinion evaluation of the position of President/Chief Executive Officer of Sweet Angels Day Care by Professor Bala Balachandran, Professor Emeritus of Accounting and Operations Management at the Stem School of Business of the New York University.

      ii. Sections of the regulations set forth by the Texas Department of Family and Protective Services (DFPS) showing significant regulatory overlap between the duties of a Permit Holder and the definition of "executive capacity" under 8 C.F.R § 214.2(1)(*l*)(ii)(C).

      iii. A copy of the Child-Care Licensing Data Book, Child Day Care Licensing Statistics - Fiscal Year 2018, evidencing high turnover rates for workers in the daycare industry in Texas as the industry standard.

      iv. Documentation of the past six Child-Care Directors employed at Sweet Angels Day Care.

      v. Child-Care Licensing documentation calling Shamsoddin the "Controlling Person" of Sweet Angels as of December 22, 2016.

      vi. Sign In/Sign Out logs of children of clients, evidencing ongoing business at Sweet Angels Day Care.

(Dkt. No. 1 ¶ 35). On November 27, 2020, USCIS denied the appeal, again asserting that Shamsoddin's described duties were too vague, and Sweet Angels Day Care had insufficient staffing levels (*Id*. at ¶¶ 5, 36). Also in the appeal decision, USCIS reserved judgment on whether Plaintiffs were still doing business in the United States. (*Id*. at ¶ 5). On January 13, 2021, Plaintiffs initiated this action, asking the Court grant Summary Judgment and hold that Defendant's denial of the L-1A renewal arbitrary and capricious, an abuse of discretion, and not in accordance with the law. (*Id*.).

### III. LEGAL STANDARD

a. <u>Rule 12(b)(1)</u>

      Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject

matter jurisdiction. FED. R. CIV. P. 12(b)(1). When the court lacks statutory or constitutional power to adjudicate the case, the case is properly dismissed for lack of subject matter jurisdiction. *Id.*; *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). The plaintiff bears the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction. *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020) (citing *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012)).

b. Rule 56(a)

"Summary judgment is required when 'the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). A dispute of a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether the nonmoving party has established the essential elements of their case, the court must draw all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Yet, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" to defeat summary judgment. *Id*. at 252. Moreover, "conclusory allegations" will not suffice in overcoming a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

c. Administrative Procedure Act ("APA")

Under the APA, an agency action cannot be overturned unless the agency's legal conclusions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." 5 U.S.C. § 706(2)(A). This standard is deferential to the agency and does not allow a court "to substitute [its] judgment for that of the agency." *Sw. Elec. Power Co. v. EPA*, 920 F.3d

999, 1013 (5th Cir. 2019). So long as "the agency's reasons and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld." *Clean Water Action v. EPA*, 936 F.3d 308 (5th Cir. 2019).

The standard of review for this case is whether the AAO's decision was arbitrary and capricious. For the Court to hold that USCIS' decision was arbitrary and capricious, Plaintiffs must establish that USCIS "(1) relied on factors which Congress has not intended it to consider, (2) entirely failed to consider an important aspect of the problem, (3) offered an explanation for its decision that runs counter to the evidence before the agency, or (4) is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Tex. v. United States Envtl. Prot. Agency*, 829 F.3d 405, 425 (5th Cir. 2016) (quoting *Tex. Oil & Gas Ass'n v. U.S. E.P.A.*, 161 F.3d 923, 933 (5th Cir. 1998). When deciding whether a decision under the APA was arbitrary and capricious, the administrative record is the exclusive basis for the Court's judicial review. *Camp v. Pitts*, 411 U.S. 138, 141-42 (1973). The agency's factual findings are reviewed for substantial evidence. *See* 5 U.S.C. § 706(2)(E); *Silwany-Rodriguez v. INS*, 975 F.2d 1157 (5th Cir. 1992). In this context, substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Worldcall Interconnect, Inc. v. FCC*, 907 F.3d 810 (5th Cir. 2018) (quoting *Elgin Nursing & Rehab. Ctr. v. U.S. DHHS*, 718 F.3d 488 (5th Cir. 2013)). "The [challenger] must show that the evidence was so compelling that no reasonable factfinder could conclude against it." *Carbajal- Gonzalez v. INS*, 78 F.3d 194 (5th Cir. 1996); *Hames v. Heckler*, 707 F.2d 162 (5th Cir. 1983).

d.  <u>Requirements for an L-IA Visa</u>

For Shamsoddin to be granted a renewed L-IA visa he must have been employed "for one

continuous year within three years preceding the Beneficiary's application for admission into the United States in a capacity that is managerial, executive, or involves specialized knowledge." *See* 8 U.S.C. § 1101(a)(15)(L). Also, he must "seek to enter the United States temporarily to continue performing his or her services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves specialized knowledge." *Id*. The second requirement is at issue in this case. The INA defines the term "executive capacity" as an assignment in which the employee primarily:

> i. Directs the management of the organization or a major component or function of the organization;
>
> ii. Establishes the goals and policies of the organization, component, or function;
>
> iii. Exercises wide latitude in discretionary decision-making; and
>
> iv. Receives only general supervision or direction from higher-level executives, the board of directors, or stockholders of the organization.

8 U.S.C. § 1101(a)(44)(B); 8 C.F.R. § 214.2(*l*)(l)(ii)(C). On the other hand, managerial capacity is defined as an assignment in which the employee primarily:

> i. Manages the organization or a department, subdivision, function, or component of the organization;
>
> ii. Supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
>
> iii. Has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) if another employee or other employees are directly supervised; if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
>
> iv. Exercises discretion over the day-to-day operations of the activity or function for which the employee has authority. A first-line

> supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

8 U.S.C. § 1101(a)(44)(A); 8 C.F.R. § 214.2(*l*)(l)(ii)(B). If staffing levels are used to determine whether an individual is acting in a managerial or executive capacity:

> [T]he Attorney General shall take into account the reasonable needs of the organization, component, or function in light of the overall purpose and stage of development of the organization, component, or function. An individual shall not be considered acting in a managerial or executive capacity (as previously defined) merely based on the number of employees that the individual supervises or has supervised or directs or has directed.

8 U.S.C. § 1101(a)(44)(C); *see also* 8 C.F.R. § 204.5(j). The Beneficiary's duties are considered a "critical factor" in determining whether his or her position fits within the definition of managerial or executive. *National Hand Tool Corp. v. Pasquarell,* 889 F.2d 1427, 1476 n. 5 (5th Cir. 1989).

## IV.   ANALYSIS

Plaintiffs' arguments can be distilled into two main points. First, Plaintiffs argue that the USCIS's denial was arbitrary and capricious because it did not properly consider Sweet Angel Day Care's company business plan and bylaws or the supporting letter from Dr. Balanchandran. (Dkt. No. 14). Second, Plaintiffs argue that USCIS failed to consider whether Shamsoddin's role was managerial rather than executive. (*Id*.) Neither of these arguments can overcome the highly deferential standard of review of whether the AAO's decision was arbitrary and capricious. Although the Court may have come out differently if this case were before it on a *de novo* standard of review, it is not the Court's role "to substitute [its] judgment for that of the agency." *Sw. Elec. Power Co.*, 920 F.3d at 1013.

   a. <u>The AAO Decision Was Not Arbitrary and Capricious</u>

Plaintiffs' strongest argument that the AAO's decision was arbitrary and capricious is that

the decision did not expressly consider the company's business plan and bylaws. However, this argument does not eclipse the highly deferential standard of review that the Court must apply, for two reasons. First, these documents only outlined Shamsoddin's proposed job duties, they did not provide any affirmative evidence that Shamsoddin *actually performed* those duties. Instead of focusing on those documents, the AAO decision discussed, at length, the documentation that Plaintiffs filed in the RFE, which was far more specific, and thus more useful, in deciding if Shamsoddin was employed in an executive capacity. For example, the RFE documentation broke down each of Shamsoddin's alleged job duties into the four elements required of "executive capacity" and then delineated the percentage of time Shamsoddin spent on each duty. (Dkt. No. 10-1, 6–7). In weighing the delineated job duties, the AAO decision correctly pointed out that "the total percentages of time assigned to the job duties listed under the second, third, and fourth elements of 'executive capacity' far exceed the percentages of time [Shamsoddin] allegedly spends overall on those respective elements of 'executive capacity.'" The AAO decision noted that Plaintiff made no effort to explain this inconsistency and also explained that the job duties delineated were (1) too vaguely described and (2) asserted without any corroborative evidence. (*Id*.) Moreover, the AAO decision discussed the job descriptions for the remaining three elements of executive capacity and held that they were also too vague and lacked enough proof to establish that Shamsoddin was engaged in an executive capacity position. Based on the record, the Court cannot say that the AAO's decision was arbitrary and capricious. The AAO spent ample space considering the most specific evidence put before it and concluded that Shamsoddin failed to eclipse the burden of proof to establish that he was engaged in an executive capacity position.

      Second, Plaintiffs also alleges that the AAO's decision was arbitrary and capricious for not fully considering the letter written on Shamsoddin's behalf by Dr. Bala Balachandran. The Court

is not persuaded. First, the letter is written in the hypothetical—Dr. Balachandran only says that "[b]y performing the above-mentioned duties, [Shamsoddin] *would be* acting in an executive capacity." (Dkt. No. 10-1, 9) (emphasis added). By saying that he *would be acting in an executive capacity*, the letter fails to add any relevant evidence for the AAO to have considered. The AAO was reviewing the Agency's holding that Plaintiffs' evidence was too vague for the agency to decide that Shamsoddin was acting in an executive capacity. The letter does not provide any further context to show that Shamsoddin was actually in an executive role and performing the duties as described. As such, the AAO's decision to not more extensively discuss Dr. Balachandran's letter was not arbitrary and capricious.

b. <u>The USCIS Was Not Required to Consider Shamsoddin's Role as a Manager</u>

Plaintiffs' argument that the AAO was required to consider whether Shamsoddin's role was "managerial" is not supported by the law or the record. As such, Plaintiffs fail to eclipse their burden of proving, by a preponderance of the evidence, that USCIS's actions were arbitrary and capricious. *See Hanif v. United States*, CV H-15-2718, 2017 WL 447465, at *5 (S.D. Tex. Feb. 2, 2017).

USCIS may evaluate an L-1A visa under either the executive capacity or managerial capacity standards. *See* 8 U.S.C. § 1101(a)(15)(L). In this case, at every turn, Plaintiffs alleged that Shamsoddin was functioning in an executive capacity. Given the statute allows the agency to evaluate an L-1A visa applicant as in a capacity that is "managerial, executive, or involves specialized knowledge," the Court cannot say that it was arbitrary and capricious for the AAO to evaluate Shamsoddin's role under only the executive capacity framework. *Id*. This is for multiple reasons. First, Plaintiffs do not cite to any statutes or caselaw that would require the AAO to have evaluated Shamsoddin's role under both frameworks. Because Plaintff does not cite to any law,

and the Court is unable to find any such case, it would be improper to find that the AAO's decision to not evaluate under both frameworks was arbitrary and capricious.

Second, at each step of the legal proceedings Plaintiffs argued that Shamsoddin deserved approval for his request based on his employment in an executive capacity. *see, e.g.*, Dkt. No. 10-6, 182 ("Since the duties of Beneficiary as President/Chief Executive Officer fulfills all four criteria of the definition of 'executive' under INA § 101(a)(44)(B) and as supported by the evidence, the U.S. position is primarily executive in nature."); Dkt. No. 10-1, 41–43 (excerpt from Plaintiffs' Supplemental Brief sub-headed "The U.S. Position is Executive in Nature"); *Id*. at 50 (When explaining the standard of review under APA, the Plaintiffs stated, "Gloria D. Lacson FC DBA Sweet Angel Daycare has demonstrated through relevant, probative and credible evidence that Mr. Shamsoddin's U.S. position is executive in nature"). Based on Plaintiffs' own statements throughout the proceedings, the Court cannot say that the AAO's decision to decide the case as it was presented to them—i.e. to answer whether Shamsoddin's role was in an executive capacity— was arbitrary and capricious.

Third, the main point of both the Agency and AAO decisions was that Plaintiffs' job descriptions were too vague to decide in what capacity he was employed. With this as the main holding on review, the Court cannot say it was arbitrary and capricious to not consider whether Shamsoddin was employed in a managerial role because changing the capacity being considered would not make the job description less vague. Plaintiffs simply did not provide enough specific evidence of what Shamsoddin actually did to decide the capacity in which he was employed—this would be true regarding executive capacity, as the AAO held, and managerial capacity.

Lastly, even without accounting for the above, Plaintiffs would not prevail because of the highly deferential standard of review that the Court must apply. For example, "[i]n applying the

highly deferential standard of review, courts afford agency actions a 'presumption of regularity' and defer to them even if the court would have decided the issue differently." *Austin v. U.S., Dept. of the U.S. Army*, 614 F. App'x 198, 202 (5th Cir. 2015) (quoting *Hasie v. Office of the Comptroller of the Currency of the U.S.*, 633 F.3d 361, 365 (5th Cir. 2011)). If the agency considered the evidence and articulated a rational relationship between the facts found and the choice made, it is not arbitrary or capricious. *State of Louisiana, ex rel. Guste v. Verity*, 853 F.2d 322, 327 (5th Cir. 1988). The agency's decision does not have to be ideal so long as the agency gave at least minimal consideration to relevant facts. *See Wright v. United States*, 164 F.3d 267, 268–69 (5th Cir. 1999). Based on the record before the Court, although the decision may not be ideal, the agency provided some consideration of all relevant facts and was not required to consider whether Shamsoddin was engaged in a managerial position. Therefore, the Court cannot say the outcome was arbitrary and capricious.

V. **CONCLUSION**

The Court has considered the motions, the responses, the replies, and the applicable law. For the reasons set forth below, the Court **RECOMMENDS** that Defendant's Motion to Dismiss and Cross-Motion for Summary Judgment be **GRANTED,** and that Plaintiffs' Motion for Summary Judgment be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk

electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

      **SIGNED** in Houston, Texas on July 22, 2022.

                                          Sam S. Sheldon
                                          United States Magistrate Judge